LAW OFFICE OF FELIX VINLUAN
FELIX Q. VINLUAN
69-10 Roosevelt Avenue, 2nd Floor
Woodside, NY 11377
Tel. No. 718-478-4488
Fax No. 718-478-4488
Email: fqvinluan@yahoo.com


LAW OFFICE OF MANUEL QUINTAL
MANUEL B. QUINTAL
291 Broadway, Suite 1501
New York, NY 10007
Tel. No. 212-732-0055
Fax No. 212-587-8933
Email: quintallaw@aol.com


## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

TETYANA MOSKALENKO, on her own
behalf and on behalf of all other Seafarers
similarly situated,

|  |  |
|---|---|
| *Plaintiff,* | Docket No. 17-cv-_____ |
| - against - | CLASS ACTION VERIFIED COMPLAINT (Jury Trial Demanded) |

CARNIVAL PLC and FLEET MARITIME
SERVICES INTERNATIONAL, LTD.,

*Defendants.*

-------------------------------------------------------------------X

PLAINTIFF, Tetyana Moskalenko, on her own behalf and on behalf of all other similarly-situated current and former Ukrainian employees of Carnival PLC and/or Fleet Maritime Services International, Ltd. who worked at *Queen Mary 2*, by and through undersigned counsel, complains about the Defendants, as follows:

1

## JURISDICTION, VENUE AND PARTIES

1.      This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332(a)(1) because Plaintiff and Defendants are citizens of different states and the matter in controversy exceeds the sum of seventy five thousand dollars ($75,000).

2.      In the event diversity jurisdiction does not apply, this matter is brought under the admiralty and maritime jurisdiction of the Court. The causes of action asserted in this Complaint arise under the Seamen's Wage Act, 46 U.S.C. § 10313, and the general maritime laws of the United States.

3.      Furthermore, this matter is filed pursuant to 28 U.S.C. § 1916, which expressly states that "[i]n all courts of the United States, seamen may institute and prosecute suits and appeals in their own names and for their own benefit for wages or salvage or the enforcement of laws enacted for their health or safety without prepaying fees or costs or furnishing security therefor".

4.      The Court has supplemental jurisdiction over Plaintiff's New York State Labor Law claims pursuant to 28 U.S.C. § 1367(a).

5.      The venue for this action is proper in this District as the wrongful conduct of the Defendants and/or transactions giving rise to the causes of action occurred and/or had substantial effect within the Eastern District of New York, and each Defendant:

      a.      Does substantial business activity within the Eastern District of New York or within the state of New York; and/or

      b.      Committed unlawful conduct as set out in this Complaint, in whole or in part, within the Eastern District of New York and/or state of New York, and damaged Plaintiff within the Eastern District of New York; and/or

c.      Actively solicited business in this District: and/or

d.      Held itself out as a company licensed or registered to do business and doing business within this District; and/or

e.      Operated vessels in the waters of the state of New York and within this District.

6.      Plaintiff is a citizen of Ukraine.

7.      At all times relevant, Plaintiff is/was employed by Defendants as a seaman and worked as Bedroom Stewardess at the luxury ocean liner "*Queen Mary 2*".  She has worked for Defendants since about 2007, and her latest employment contract expires on or about March 10, 2018.

8.      Defendant CARNIVAL PLC, upon information and belief, is a foreign corporation organized under the laws of England and Wales, with a principal place of business in Southampton, United Kingdom.  It is authorized to do business in the state of New York, with a New York office location in New York County.  It currently conducts substantial business activity within the Eastern District of New York.

9.      Upon information and belief, Defendant Carnival PLC is the registered owner and/or the beneficial owner of the "*Queen Mary 2*", and it is the parent corporation of Defendant Fleet Maritime Services International, Ltd., which is likewise engaged in the business of managing and/or operating cruise ships.

10.     The "*Queen Mary 2*" is a luxury ocean liner built specifically for use in the passenger trade.  Upon information and belief, since 2004, Defendant Carnival's use of the "*Queen Mary 2*" includes the operation of voyages calling at New York ports and other U.S.

ports, such as Boston in Massachusetts, Newport in Rhode Island, and Bar Harbor in Maine, carrying United States and New York as well as non-New York passengers and crew.

11.     Upon information and belief, the "*Queen Mary 2*" is the only trans-Atlantic ocean liner in line service between Southampton, England and New York. It has a passenger capacity of 2,620, and counts about 1,200 officers and crew.  It considers New York as one of its two home ports.  "*Queen Mary 2*" is, upon information and belief, very proud to call Red Hook Brooklyn its home and/or base of operations since 2006.

12.     Upon information and belief, Defendant Carnival PLC owned, operated, managed, maintained and/or controlled the vessel "*Queen Mary 2*" on which Plaintiff worked.

13.     Upon information and belief, Defendant FLEET MARITIME SERVICES INTERNATIONAL, LTD. is a foreign company registered in Bermuda and is a wholly-owned subsidiary of Defendant Carnival PLC.

14.     Upon information and belief, majority of Defendants' stocks are owned by American citizens, and Defendants derive a significant amount of their business in New York, collecting earnings and revenues from New York and other U,S. passengers, as well as paying the expenses of "*Queen Mary 2*", in New York.

15.     At all times material hereto, Defendants were Plaintiff's employer, and Plaintiff was an employee of Defendants.

## FACTS OF THE CASE

16.     At all times material hereto, Plaintiff worked/works for Defendants aboard the *Queen Mary 2.*

17.     Plaintiff has had at least nine (9) previous contracts of employment to work for Defendants as Bedroom or Stateroom Stewardess at *Queen Mary 2.*

18.     As such Stateroom Stewardess, Plaintiff performed/performs the following duties and responsibilities:  (a) stripping the beds of linens and sheets; (b) separating the linens and sheets; (c) making the beds; (d) dusting the cabins; (e) sanitizing the cabin's handrails, door handles, closet doors, frequently touched areas, and telephones; (f) washing and/or sweeping the veranda; (g) cleaning any used coffee pots and ice buckets; (h) separating the garbage into bottles, cans, paper, and plastic; (i) taking the garbage to the incinerator; and (j) vacuuming the cabin and hallways.

19.     At all times material hereto, Plaintiff entered into similarly-worded Seafarer's Employment Agreements with Defendant Fleet Maritime Services, whereby each agreement was for a period of eight (8) to ten (10) months.

**Gratuities and Service Charges**

20.     The Seafarer Agreements provided that Plaintiff, would receive her rate of pay in the amount of $1,501 per month **"including guaranteed gratuities"**.

21.     Defendants' agents and Human Resources Personnel have always explained to Plaintiff and other stewards/stewardesses that Plaintiff and stewards are guaranteed a minimum monthly salary of $1,501 and that each steward's actual rate of pay would and could exceed the guaranteed minimum monthly salary, depending upon the gratuities or service charges that would be received from guests/passengers. Defendants have explained to Plaintiff that the stewards would share from thirty five percent (35%) of the total collected gratuities or service charges from passengers in every voyage or cruise.

22.     Plaintiff has always understood that her wage rate was guaranteed the minimum monthly amount of $1,501, and that her actual rate of pay could and would be higher than said guaranteed minimum amount, depending upon the gratuities or service charges that would be

collected from guests/passengers. Plaintiff has always understood that she will share from the thirty five percent (35%) of the total collected gratuities or service charges collected from passengers in every voyage or cruise.

23.     Defendants have always informed their *Queen Mary 2* guests/passengers that gratuity will be added to each guest's shipboard account on a daily basis for each guest, and that this "gratuity will be shared amongst those staff that helped provide and support [your] cruise experience, including the restaurant staff, **stateroom stewards** and accommodation staff, buffet stewards and others".

24.     Defendants' website (https://ask.cunard.com/help/life-on-board/gratuity) clearly informs passengers/guests that to ensure waiters and **stateroom stewards** are rewarded for the service they provide to them, "a hotel and dining service charge is added to [your] on board account and every dollar collected goes directly to the crew members."

25.     The hotel and dining service charge amounts vary by stateroom category, as follows:

Queens and Princess Grill Suites - $13.50 per person per day;
Britannia Staterooms          - $11.50 per person per day.

26.     At all times material hereto, Defendants collected gratuities/service charges from each guest/passenger who boarded *Queen Mary 2* for a voyage or cruise lasting between three days to a couple of months.

27.     At the end of each passenger voyage or cruise, Defendants failed to explain to Plaintiff how they computed the share of Plaintiff from the gratuities or service charges collected from passengers/guests. There has been no transparency as to how much gratuities or service charges were actually collected per voyage/cruise, and no explanation as to how many crew

members and which crew members were made to share from said gratuities/service charges collected per voyage/cruise.

28.     Because of this lack of transparency, Plaintiff, upon information and belief, has not properly been paid her correct wages.

29.     Because of this lack of transparency, Plaintiff, upon information and belief, was/is being paid totally out of the gratuities or service charges collected from passengers/guests.

30.     In fact, on several occasions, some stewards inquired from their supervisors and Human Resources personnel and demanded an explanation as to how their stewards' actual wage rates were being computed vis-à-vis the wording in their Seafarer Agreements that their actual rate of pay was $1,501 **"including guaranteed gratuities"**.

31.     Upon information and belief, Defendants' representatives explained to those stewards who had inquired that the $1,501 was not the steward's maximum earnings, but was only the minimum guaranteed salary, and that the actual rate of pay would and could be more than that amount ($1,501), depending upon the steward's share in the collected gratuities/service charges.

32.     Upon information and belief, internal communications between and among Defendants' Human Resources personnel documented and reflected the inquiry, and that they agreed to amend and clarify the wording in the Seafarer's Agreement to ensure that stewards clearly understand that the amount stated in the Seafarer Agreement is but the guaranteed minimum salary, and not the maximum earning.

33.     Upon information and belief, Defendants' Human Resources Personnel explained to the stewards that their (stewards') guaranteed minimum salary of $1,501 would include, in

addition, their minimum guaranteed gratuities of thirty five percent (35%) of the total collected gratuities or service charges.

34.     However, despite inquiries and demands from Plaintiff and other similarly-situated stewards, no satisfactory explanation has been given by Defendants regarding the proper computation of the stewards' shares from the gratuities/service charges collected from guests/passengers.

## **Hired Helpers During Embarkation Days**

35.     As stated above, Defendants' *Queen Mary 2* considers Red Hook Terminal in Brooklyn, New York as one of its two home ports.

36.     Upon information and belief, in 2015, *Queen Mary 2* called on the port of Brooklyn at least fourteen (14) times.

37.     Upon information and belief, in 2016, *Queen Mary 2* called on the port of Brooklyn at least fifteen (15) times.

38.     Upon information and belief, as of this date, *Queen Mary 2* has called on the port of Brooklyn this year at least twelve (12) times.

39.     Every time *Queen Mary 2* called on a major port, such as in Brooklyn, New York, its passengers/guests disembarked, and another set of passengers/guests get on board.

40.     At all times material hereto, and on embarkation days (the day a cruise ends, and new passengers board), including embarkation days at Red Hook Terminal in Brooklyn, Plaintiff had to clean between fifteen (15) and sixteen (16) cabins or staterooms before new passengers would arrive.

41.     Because not all passengers are able to disembark early, with most passengers staying at their cabins until past 8:30 in the morning, Plaintiff always found it very difficult to

finish by herself her assigned duties, cleaning between 15 and 16 staterooms, before the new set of passengers would venture to their assigned rooms at around 11:00 o'clock in the morning after they have boarded.

42.     Upon information and belief, Defendants do not have a policy or practice of requiring passengers/guests during embarkation days to leave their assigned rooms at a certain time in the morning to allow the stewards enough time to prepare the cabins/staterooms for the next set of passengers in a timely manner.

43.     Thus, to finish their respective assigned duties on time before the new set of passengers would venture into their assigned rooms, stewards, including the Plaintiff, had to hire the services of helpers to assist them in preparing and cleaning their assigned number of rooms.

44.     Upon information and belief, stewards, including Plaintiff, protested to their supervisors and requested that they be given helpers to finish their assigned duties during embarkation days at the expense of Defendants, but their protest or request was not acted upon.

45.     Upon information and belief, Defendants, despite knowing or being in the position to know that stewards/stewardesses could not clean and prepare on time their assigned number of rooms during embarkation days without having to hire helpers, did not and do not provide any assistance to the stewards/stewardesses, such as by assigning other crew members to assist them.

46.     Defendants knowingly allocated Plaintiff an unreasonable amount of work to be accomplished within an unreasonable timeframe.

47.     Defendants knew or should have known that Plaintiff, alone, would not be able to finish her assigned tasks during embarkation days within the timeframe given by Defendants.

48.     Thus, Plaintiff had to pay out of her own pockets for the services of their hired helpers during embarkation days, so that she could timely prepare and clean the staterooms for the new set of passengers/guests.

49.     Upon information and belief, Plaintiff had to pay each helper between forty dollars ($40), sixty dollars ($60) and seventy five dollars ($75) during each embarkation day. On average, each Plaintiff paid her helpers about one hundred seventy five dollars ($175) per embarkation day.

50.     Defendants knew that, as a result of the unreasonable workload given to Plaintiff during embarkation days, and as a result of their unreasonable demand for Plaintiff to accomplish the tasks in a short timeframe, Plaintiff was forced to and did hire helpers which Plaintiff was forced to pay for in spite of her protesting the situation to her supervisors.

51.     Defendants violated Plaintiff's Seafarer Agreement by forcing Plaintiff to pay helpers out of her own earned wages.

**Late Payment of Wages**

52.     As stated above, Defendants explained to Plaintiff and other stewards that the stewards' rate of pay had a guaranteed monthly amount, as provided in each steward's Seafarer Agreement, which is $1,501, and which guaranteed minimum monthly amount could and would go higher, depending upon the steward's share in the gratuities/service charges collected from guests/passengers. Thus, the actual rate of pay that each steward, including Plaintiff, ought to receive would depend to a large extent on his/her share from the collected gratuities/service charges.

53.     There have been occasions during times material hereto when a voyage or cruise would terminate so close to the end of a month that Defendants' Payroll Services Department was not able to properly and promptly compute the wages of stewards.

54.     As and by way of example, during the 12-day voyage/cruise that started on August 19, 2017 through August 31, 2017, Defendants' Payroll Services Department did not pay the full/complete wages of stewards until the end of the month (August 31), but only computed or estimated the stewards' wages, including their shares from the gratuities/service charges, only until August 28, 2017.  This meant that stewards' wages for the last three days of August 2017 (August 29, 30 and 31) were not paid until the end of the next month, or sometime end of September 2017.

55.     As and by way of another example, during a 13-day voyage/cruise that originated in New York (Brooklyn) on December 22, 2015 and came back to New York on January 3, 2016, Defendants' Payroll Services Department did not pay the wages of each of the stewards until it computed each steward's shares from the collected gratuities/service charges, which meant that it was only able to compute the wages after the end of the cruise, or after January 3, 2016. In this particular example, the wages earned by each steward who worked on January 1, 2 and 3, 2016 were paid by Defendants, not at the end of the voyage (January 3, 2016), but at the end of January 2016, or about 27 days after the end of the voyage/cruise.

56.     Instead of paying stewards, including Plaintiff, their wages at the end of each voyage, Defendants paid them in arrears once a month, and not when payment was due, namely within 24 hours after the discharge of passengers, their luggage and whatever purchased merchandise at the end of each voyage/cruise.

## **CLASS ACTION ALLEGATIONS**

57.     Plaintiff brings this action on her own behalf, and on behalf of all others similarly situated stewards/stewardesses who have not been properly and timely paid their wages, under the provisions of Rule 23(a) and Rule 23(B0(3) of the Federal Rules of Civil Procedure.

58.     The Class is specifically defined as follows:  All former and current Ukrainian stewards/stewardesses employed at any time aboard *Queen Mary 2* during the period of November 26, 2014 to November 27, 2017 who have not been paid in full or their proper wages, and/or who have not been paid in a timely manner their wages upon the conclusion of each voyage and/or upon their discharge from *Queen Mary 2* at U.S. ports or harbors, due to unlawful deductions from or improper computations of, their share from the collected gratuities or service charges, and/or due to the unreimbursed business expenses they incurred in paying helpers to assist them during embarkation days.

59.     Defendants' corporate officers and directors are excluded from the indicated Class.

**Commonality**

60.     There are questions of law and fact that are common to the claims of Plaintiff and the Class. Among these common questions are the following:

        a)      Whether the Defendants failed to comply with 46 U.S.C. § 10313 as to the Plaintiff and the Class of stewards/stewardesses, each time *Queen Mary 2* ended a voyage or cruise;

        b)      Whether the counting or computation or distribution of collected gratuities or service charges resulted in improper or incorrect payment of the wages of the Plaintiff and of the members of the Class;

c)       Whether the non-reimbursement by Defendants of wages paid by Plaintiff and the Class to helpers assisting them during embarkation days resulted in improper deductions of their agreed-upon wages;

d)       Whether Defendants' failure to comply with 46 U.S.C. § 10313 in any respect was made with sufficient cause;

e)       Whether the Plaintiff and the Class are entitled to statutory compensation under 46 U.S.C. § 10313(g) for their failure to timely receive all their wages at the end of each voyage or cruise.

**Numerosity**

61.      The exact number of members of the Class is not known, but it is estimated that there are in excess of 40 members.   The Class is so numerous that separate joinder of each member is impracticable. This action satisfies the requirements of Rule 23(a)(1).

**Typicality**

62.      Plaintiff's claims are typical of the claims of the Class in that each steward/stewardess is claiming failure of receiving timely and full or correctly-computed wages at the end of each voyage or cruise, due to the improper counting or computation or distribution of each steward's share from the collected gratuities or service charges, and/or due to the non-reimbursement by Defendants of the wages paid by each steward to his/her helpers during embarkation days, which should properly have been Defendants' business expenses.

63.      The core issues which predominate over all the other issues in the litigation involve (a) Defendants' violation of federal statutory wage law contained in 46 U.S.C. § 10313 that requires payment of all wages to be made within a certain period of time at the end of each voyage; and (b) the improper or incorrect payment of wages, including the improper deduction

of wages due to non-reimbursement of what otherwise would have been Defendants' business expenses which are unnecessarily being paid by stewards, and whether such payments and deductions are proper under general maritime law and federal statute.

64.     Plaintiff and the Class are all Ukrainian nationals who formerly or currently serve as stewards/stewardesses aboard *Queen Mary 2* who have not received timely and full or correctly-computed wages at the end of each voyage or cruise, due to the improper counting or computation or distribution of each steward's share from the collected gratuities or service charges, and/or due to the non-reimbursement by Defendants of the wages paid by each steward to his/her helpers during embarkation days, which should properly have been Defendants' business expenses.

65.     Plaintiff's claims are typical to the claims of the Class in that the claims of the members of the Class, like the Plaintiff's, depend upon a showing of the acts and omissions of Defendants, giving rise to the right of Plaintiff to the relief sought herein.   Defendants are engaged in a common course of conduct to the detriment of the Plaintiff and the Class. This action satisfies the requirements of Rule 23(a)(3).

**Adequacy**

66.     Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class. Plaintiff is committed to the vigorous prosecution of this action and has retained competent counsel, experienced in litigation of this nature as well as in both employment and maritime law, especially involving seafarers, to represent her and the Class.

67.     There is no conflict between Plaintiff and the other members of the Class with respect to this action, or with respect to the claims for relief herein, or with Plaintiffs in any related action.

**Requirements of Fed. R. Civ. Proc., Rule 23(b)**

68.     The questions of law or fact common to the claims of Plaintiff and of each Class member predominates over any questions of law or fact affecting only individual members of the Class. All claims by named Plaintiff and unnamed Class members are based on the same alleged "across the board" failure by stewards/stewardesses to **timely** receive their **full** wages upon the end of each voyage or cruise.

69.     Common issues predominate when, as here, liability can be determined on a class-wide basis.

70.     Since all claims by Plaintiff and unnamed Class members are based on the same alleged "across the board" failure that stewards/stewardesses have not timely received their full and correct wages at the end of each voyage or cruise, pursuant to 46 U.S.C. 10313, the predominance requirement of Fed. R. Civ. Proc. 23(b) is satisfied.

71.     A class action is superior to several tens of individual actions in part because of the nonexhaustive factors listed below:

a)     Joinder of all Class members would create extreme hardship and inconvenience for the affected seafarers because of their immense geographical dispersion in the different regions of Ukraine where they reside;

b)     It is highly unlikely that any individual Plaintiff would shoulder the burden of this vast and potentially complex litigation as many are simply too poor or ignorant of the laws and methods used by Defendants to calculate various wage payments and deductions, to know that they can bring separate actions;

c)     The interests of justice will be well served by resolving the common disputes of potential Class members in one forum;

d)      Individual suits would not be cost effective, especially in light of the fact that all Plaintiffs and Class members are all Ukrainian nationals residing in various regions of Ukraine.  The costs to individual plaintiffs in a collective action are lowered through the pooling of resources and by limiting the controversy to one proceeding which efficiently resolves common issues of law and fact that arose from the same alleged activity;

e)      A class action is superior method of seeking relief because certain members of the Class fear retaliation from Defendants with respect to their present and continuing employment;

f)      The action is manageable as a class action; individual lawsuits are not economically maintainable as individual actions.

g)      Federal courts have already determined that in seaman's claims involving many potential Plaintiffs, as in the case at bar, "the class action [pursuant to Rule 23(b)(3)] is not simply the 'superior' means of resolving the dispute fairly and efficiently, but the only means of doing so." *Gentler v. Sedco,* 866 F. Supp. 786, 788 (S.D.N.Y. 1994); *Bolanos v. Norwegian Cruise Lines Limited,* 212 F.R.D. 144, 158 (S.D.N.Y. 2002).

## FIRST CAUSE OF ACTION
### (Failure to Pay Wages Under the Seamen's Wage Act, 46 U.S.C. § 10313)

72.     Plaintiff and the Class she purports to represent re-allege, adopt, and incorporate by reference paragraphs 1 through 71 as though originally alleged herein.

73.     At all times material hereto, Plaintiff and the Class were employed as seamen in the service of Defendants' vessel.

74.     While in the service of Defendants' *Queen Mary 2*, Plaintiff and the Class performed all the work required of them and carried out the orders given to them by their superiors.

75.     Section 10313(f) of Title 46, United States Code, provides in part that "(A)t the end of a voyage, the master shall pay each seaman the balance of wages due the seaman within 24 hours after the cargo has been discharged, or within 4 days after the seaman is discharged, whichever is earlier."

76.     Under Section 10313, Plaintiff and the Class are required to receive all wages aboard Defendants' vessel within 24 hours at the end of each voyage.

77.     During all times relevant, going back to three years and even six years from commencement of this Complaint, Plaintiff and the Class aboard *Queen Mary 2* did not receive their full wages within 24 hours at the end of each voyage as required by 46 U.S.C. § 10313(f).

78.     During all times relevant, Plaintiff and the Class aboard *Queen Mary 2* were not properly paid their wages pursuant to their respective Seafarer Agreements as Defendants, upon information and belief, either improperly counted the gratuities/service charges collected from guests/passengers every voyage, or improperly included other crew members otherwise not eligible to share in the collected gratuities/service charges, and/or, Defendants, upon information and belief, paid the wages of Plaintiff and the Class solely out of the gratuities/service charges collected from passengers/guests.

79.     During all times relevant, Plaintiff and the Class aboard *Queen Mary 2* were not properly paid their wages at the end of each voyage as they had to hire helpers at their own expense during embarkation days and as they were not reimbursed by Defendants for work that benefited Defendants.

80.     Defendants violated the Seamen's Wage Act by assigning the Plaintiff and the Class an amount of work that could not be completed in a timely fashion without the Plaintiff and the Class using some of their wages to pay for helpers.

81.     Defendants have neglected and refused, and still neglect and refuse, without sufficient cause, to pay Plaintiff and the Class she purports to represent, their proper wages with the correct computation of each steward's share from the collected gratuities/service charges for every voyage or cruise.

82.     Defendants have neglected and refused, and still neglect and refuse, without sufficient cause, to pay Plaintiff and the Class she purports to represent, their proper wages that should include reimbursements for payments made to helpers that otherwise would have been paid by Defendants themselves.

83.     Defendants have neglected and refused, and still neglect and refuse, without sufficient cause, to pay Plaintiff and the Class she purports to represent, their proper wages within 24 hours after the discharge of passengers, their luggage and whatever purchased merchandise at the end of each voyage/cruise.

84.     By reason of the foregoing, the Defendants have violated 46 U.S.C. § 10313, and Plaintiff and the Class she purports to represent have suffered damages thereby.

85.     Pursuant to 46 U.S.C. § 10313(g), when full or proper payment is not made as provided under 46 U.S.C. § 10313(f) without sufficient cause, the master or owner shall pay to the seaman two (2) days wage for each day payment is delayed.

86.     As a result of Defendants' conduct, Plaintiff and the Class are entitled to an award of all such wages, interest on the unpaid amounts until the date of judgment, and all amounts due Plaintiff and the Class as penalties under applicable provisions of 46 U.S.C. § 10313(g).

## SECOND CAUSE OF ACTION
### (Failure to Pay Agreed-Upon Wages, NYLL Article 6)

87.     Plaintiff and the Class she purports to represent re-allege, adopt, and incorporate by reference paragraphs 1 through 86 as though originally alleged herein.

88.     Upon information and belief, Defendants have the power to hire and fire employees, including Plaintiff and the Class, establish and pay their wages, set their work schedules and maintain their employment records.

89.     At all times relevant to this action, Plaintiff and the members of the Class were/are employees of Defendants within the meaning of New York Labor Law §§2, 190(2), and 651(5).

90.     During all relevant times, Defendants Carnival PLC and Fleet Maritime Services International, Ltd. were/are Plaintiffs' and the Class' employer within the meaning of New York Labor Law.

91.     Defendants' failure to pay Plaintiff and the Class she purports to represent their correct monthly rate of pay, with the proper computation of their share from collected gratuities and service charges, violates the New York Labor Law Article 6, section 190 *et seq.*

92.     Due to Defendants' violations of New York Labor Law, Plaintiff and the Class are entitled to recover from Defendants their proper monthly rate of pay, which should include their share from gratuities/service charges, and also pre-judgment and post-judgment interest, reasonable attorney's fees, and the costs of the action, pursuant to New York Labor Law Article 6, section 198.

### THIRD CAUSE OF ACTION
### (Illegal Deductions Under NYLL sec. 193)

93.     Plaintiffs and the Class she purports to represent re-allege, adopt, and incorporate by reference paragraphs 1 through 92 as though originally alleged herein.

94.     At all relevant times to this action, Plaintiff and the Class were employed by Defendants within the meaning of New York Labor Law article 6.

95.     New York Labor Law section 193 provides in pertinent part, as follows: "No employer shall make any deduction from the wages of an employee, except deductions which: b) are expressly authorized in writing by the employee and are for the benefit of the employee; ..."

96.     Upon information and belief, Defendants made deductions from Plaintiff's and the Class members' wages, when they either improperly counted the gratuities/service charges collected from guests/passengers during every voyage, or improperly included other crew members otherwise not eligible to share in the collected gratuities/service charges, and thus, Defendants short-changed Plaintiff and the members of the Class of their correct and proper wages.

97.     Upon information and belief, Defendants made deductions from Plaintiff's and the Class members' wages, when they forced Plaintiff and the Class to hire helpers finish their assigned duties within an unreasonable timeframe, and unreasonably failed to reimburse them of their expenses which otherwise would have been Defendants' business expense.

98.     Plaintiff and the Class did not authorize the above deductions, which were not for their benefit.

99.     Defendants acted willfully and with reckless indifference to the statutory rights of Plaintiff and the Class.

100.    Due to Defendants' violations of New York Labor Law, Plaintiff and the Class are entitled to recover from Defendants their unlawfully deducted wages, reasonable attorney's fees and costs of the action, and pre-judgment and post-judgment interest.

### FOURTH CAUSE OF ACTION
**(Illegal Retention or Distribution of Gratuities Under NYLL sec. 196-d)**

101.    Plaintiff and the Class she purports to represent re-allege, adopt, and incorporate by reference paragraphs 1 through 100 as though originally alleged herein.

102.    New York Labor Law section 196-d provides in pertinent part, as follows: "No employer or his agent . . . . shall demand or accept, directly or indirectly, any part of the gratuities received by an employee, or retain any part of a gratuity or of any charge purported to be a gratuity for an employee."

103.    Upon information and belief, Defendants illegally retained portions of gratuities or service charges meant to be gratuities for Plaintiff and the Class, and distributed or shared said gratuities/service charges to other crew members or officers who otherwise should not be eligible to share from said gratuities or service charges.

104.    Defendants' violations of Section 196-d were willful and/or not in good faith.

105.    Plaintiff and the Class are entitled to recover from Defendants the gratuities/service charges, reasonable attorney's fees, costs, liquidated damages, and pre-judgment and post-judgment interest.

## FIFTH CAUSE OF ACTION
### (Declaration of Rights pursuant to 28 U.S.C. §2201)

106.    Plaintiff and the Class she purports to represent re-allege, adopt, and incorporate by reference paragraphs 1 through 105 as though originally alleged herein.

107.    This is an action for declaratory judgment, pursuant to 28 U.S.C. §2201, with respect to the interpretation and construction of the rights of the Plaintiff and the Class in pursuing their claims before the Courts.

108.    Plaintiff's Seafarer Agreement references a Part B which sets out the standard terms and conditions of her employment.

109.    Par. 15.1 of Part B of the Seafarer Agreement provides that any grievance "must be referred to arbitration to the exclusion of any other legal or court proceeding".

110.    Par. 15.2 of Part B of the Seafarer Agreement provides that:

"In the absence of a controlling CBA or government-mandated contract containing a dispute resolution provision or procedure, every conceivable dispute (including but not limited to wage and benefit matters, xxx) between you and the Company or others . . . shall be resolved by binding arbitration. The parties agree that any and all claims between them of any kind or nature whatsoever are international commercial disputes and shall be referred to and resolved exclusively by binding arbitration in Bermuda (in English), to the exclusion of any other fora . . ."

111.    Par. 16 of Part B of the Seafarer Agreement, which is entitled "Governing Law" specifically provides that "(T)his Agreement shall be governed by the law of Bermuda" .

112.    Plaintiff and the Class expect the Defendants to move to compel the arbitration of their claims in Bermuda using Bermuda law, pursuant to Part B of the Seafarer Agreement.

113.    An arbitration clause is enforceable as long as it does not eliminate a party's fundamental or statutory right.

114.    An arbitration agreement is not binding if it inherently conflicts with Plaintiff's statutory rights.

115.    The Plaintiff and the Class have statutory or fundamental rights under the Seamen's Wage Act, 46 U.S.C. § 10313, against the Defendants.

116.    The "choice of forum" and "choice of law" provisions contained in Part B of Plaintiff's Seafarer Agreement operate in tandem as a prospective waiver of Plaintiff's (and the Class') right to pursue U.S. statutory remedies.

117.    Part B of the Seafarer Agreement explicitly states that Bermuda law will apply. There is no doubt that U.S. laws, specifically 46 U.S.C. § 10313, will not apply.

118.    Upon information and belief, there is no counterpart law in Bermuda that parallels or provides similar remedies to seafarers as 46 U.S.C. § 10313 provides. Bermuda does not have and/or does not apply the U.S. Seamen's Wage Act or any similar recourse available for Plaintiff and the Class.

119.    Under Part B of the Seafarer Agreement, the Bermuda arbitrator is duty-bound to apply Bermuda law irrespective of any U.S. public policy considerations.

120.    The arbitration clause in Plaintiff's Seafarer Agreement inherently conflicts with the Seamen's Wage Act created for the purpose of protecting seamen, such as Plaintiff, with respect to being paid their full earned wages.

121.    Plaintiff and the Class will therefore not be able to bring their Seamen's Wage Act claims in Bermuda, and their inability to bring such claims certainly qualifies as a prospective waiver of their U.S. statutory rights, including their right to enforce treble-damages wage penalty provision for late payments.

122.    Consequently, the substantive law chosen by Defendants in the relevant arbitration clause strips Plaintiff and the Class of their statutory wage rights.

123.    Moreover, there is no assurance of an opportunity for review by this Court of the arbitration decision in Bermuda. If, applying Bermuda law, Plaintiff and the Class receive no award in the arbitral forum (Bermuda) given the U.S. based nature of their claims, they will have nothing to enforce in U.S. courts, and they will be deprived of any later opportunity to review.

124.    Plaintiff and the Class are therefore in need of the present declaration of their rights that compelling them to arbitrate their claims in Bermuda applying the law of Bermuda effectuates a prospective waiver of their rights to pursue U.S. statutory remedies and is against U.S. public policy. (Pls. see *Thomas v. Carnival Corp.*, 573 F.3d 1113 (11th Cir. 2009); also *Central National Gottesman Inc. v. M.V. Gertrude Oldendorff*, 204 F.Supp.2d 675 (S.D.N.Y. 2002) ("The Court is persuaded that the forum selection clause at issue here essentially operates as a prospective waiver of Gottesman's right to pursue statutory remedies under COGSA.").

23

125.     The Plaintiff's and the Class' right to recovery is dependent upon this Court's application and interpretation of the law.

126.     Defendants' interest in this declaration of rights is actual, present, adverse and antagonistic in fact and/or law to Plaintiff's and the Class' interest.

127.     Plaintiff and the Class she purports to represent seek relief in order to enforce their U.S. statutory rights, and not to merely seek legal advice from this Honorable Court.

128.     By reason of the foregoing, an actual and justiciable controversy exists between Plaintiff and the Defendants.  Plaintiff seeks a declaratory judgment that the "choice of forum" and "choice of law" arbitration provisions contained in Part B of Plaintiff's Seafarer Agreement clearly operate in tandem as a prospective waiver of her rights to pursue U.S. statutory remedies and are therefore against public policy, and must therefore not be enforced.

## **PRAYER**

WHEREFORE, Plaintiff, on her own behalf and on behalf of the Class, respectfully requests that this Court:

A.     Certify this action as a class action under Federal Rules of Civil Procedure 23;

B.     Declare the arbitration agreement contained in Part B of the Seafarer's Agreement as against public policy;

C.     Award Plaintiff and the Class the amounts prescribed by Section 10313, including pre-judgment interest on these amounts;

D.     Award Plaintiff and the Class damages for any deducted and unpaid compensation and/or unreimbursed business expenses paid by Plaintiff, including penalty wages and pre-judgment on these amounts;

E.     Award Plaintiff and the Class their attorney's fees, costs and expenses;

F.    Award Plaintiff and the Class such further relief as is appropriate in the interests of justice.

**DEMAND FOR JURY TRIAL**

Plaintiff requests a jury trial on any and all counts for which a trial by jury is permitted.

Dated this 27th day of November 2017.

LAW OFFICE OF FELIX VINLUAN

By: _____

FELIX Q. VINLUAN
69-10 Roosevelt Avenue, 2nd Floor
Woodside, NY 11377
Tel. No. 718-478-4488
Fax No. 718-478-4488
Email: fqvinluan@yahoo.com

LAW OFFICE OF MANUEL QUINTAL

By: _____

MANUEL B. QUINTAL
291 Broadway, Suite 1501
New York, NY 10007
Tel. No. 212-732-0055
Fax No. 212-587-8933
Email: quintallaw@aol.com

*Co-counsel for the Plaintiff and the Class*

## VERIFICATION

STATE OF NEW YORK     )
COUNTY OF QUEENS     ) S.S.

    **I, TETYANA MOSKALENKO,** of legal age, Ukrainian national, and presently residing at Radisson Hotel, 135-30 140th Street, Jamaica, NY 11436, after having been sworn in accordance with law, hereby state that I am the Plaintiff in the within Complaint. I have read the foregoing Complaint and know the contents thereof. The contents are true to my own knowledge, except as to matters therein stated to be alleged upon information and belief, and as to those matters, I believe them to be true.

**TETYANA MOSKALENKO**

    SUBSCRIBED AND SWORN to before me on this 27th day of November 2017 in Queens, New York.

Notary Public

FELIX Q. VINLUAN
Notary Public, State of New York
No. 02VI6129101
Qualified in Nassau County
Commission Expires June 20, 2021

26